IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ ODESSA DIVISION

| | |
|---|---|
| **DENNIS E. HODGE, Individually,** ) | |
| ) | **CASE NO. 7:20-cv154** |
| *Plaintiff.* ) | |
| *v.* ) | **COMPLAINT FOR** |
| ) | **VIOLATION OF CIVIL RIGHTS** |
| **MIDLAND COUNTY, a governmental** ) | |
| **entity, BOBBY NEAL, in his individual** ) | **(42 U.S.C. § 1983)** |
| **capacity, and DOES 1-10, Inclusive.** ) | |
| ) | |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

Plaintiff DENNIS E. HODGE for his Complaint against the above-named Defendants, respectfully states and alleges as follows:

## JURISDICTION

1. Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the Constitution of the United States, including the Fourth and Fourteenth Amendments of the U.S. Constitution.

2. Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought

pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

3. Venue is properly established in the United States District Court for the Western District of Texas- Midland/Odessa Division pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of Midland, Midland County Texas, and all of the Defendants were either employed in or are residents of Midland County in the State of Texas where jurisdiction is the United States District Court for the Western District of Texas, Midland/ Odessa Division in Midland, Texas.

## PARTIES

4. At all times relevant to the facts and circumstances in the Complaint, Plaintiff DENNIS E. HODGE (hereinafter referred to as "PASTOR") was a resident of the City of Midland, Midland County, Texas and an ordained minister.

5. At all times relevant to the facts and circumstances in the Complaint, Defendant COUNTY of MIDLAND (hereinafter referred to as "MIDLAND") is a governmental entity, duly organized and existing under the laws of the State of Texas. At all times herein, the Midland County Sheriff Department (hereinafter referred to as "MIDLAND SHERIFF") was the law enforcement arm of County of Midland (hereinafter referred to as "MIDLAND"). The MIDLAND SHERIFF had operational control of the Midland

Fugitive Task Force (hereinafter referred to as TASK FORCE) and under the administrative and operational control of MIDLAND.

6. At all times mentioned herein, defendant BOBBY NEAL ("hereinafter referred to as "BOBBY) was an individual residing on information and belief in Midland County, Texas and was an officer, agent, and or employee of the Midland Sheriff, Midland Fugitive Task Force, County of Midland with the rank of Sergeant. Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful seizure and excessive use of force against PASTOR.

7. At all times mentioned herein, defendant DOE 1 was an individual residing on information and belief in Midland County, Texas and was an officer, agent, and or employee of the Midland Sheriff, Midland Fugitive Task Force, County of Midland, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful seizure and excessive use of force against PASTOR.

8. At all times mentioned herein, defendant DOE 2 was an individual residing on information and belief in Midland County, Texas and was an officer, agent, and or employee of the Midland Sheriff, Midland Fugitive Task Force, County of Midland, Texas whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law in engaging in the conduct described herein who was

directly involved in the wrongful seizure and excessive use of force against PASTOR.

9. At all times mentioned herein, defendant DOE 3 was an individual residing on information and belief in Midland County, Texas and was an officer, agent, and or employee of the Midland Sheriff, Midland Fugitive Task Force, County of Midland, Texas whose acts as alleged herein were performed solely in her individual capacity and/or under color of state law in engaging in the conduct described herein who was directly involved in the wrongful seizure and excessive use of force against PASTOR.

10. DOES 4-10, inclusive, are individuals residing in MIDLAND County, Texas and who was an officer, agent, and/or employee of the Midland Sheriff, Midland Fugitive Task Force ,County of Midland, Texas whose acts as alleged herein were performed solely in their individual capacity and/or under color of state law and were responsible in some manner for the damages incurred by PASTOR.

11. Plaintiff is ignorant of the true names and capacities of defendant DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiff as set forth herein. Plaintiff will amend his Complaint to state the true names and capacities of defendants DOES 1 through 10, inclusive, when they have been ascertained.

12. In engaging in the conduct described herein, defendant sheriff's deputies acted n

their individual capacity and/or under color of law while engaging in the conduct described herein.

13. Plaintiff is informed and believes, and on such basis alleges, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa. In addition, Plaintiff is informed and believes, and on such basis alleges, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or jointly collaborated with each of the remaining Defendants and identified persons in committing the acts herein alleged.

14. Plaintiff is informed and believes and on such basis alleges that each of the above named Defendants and settling co-conspirators was acting under the color of state law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

15. Plaintiff is informed and believes and on such basis alleges that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as

more fully alleged herein. Moreover, all of the Defendants and identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint.

**FACTUAL ALLEGATIONS**

16. In or about January 8, 2019 sometime in or about 7:00 P.M., PASTOR arrived in front of the Midland Police Department located at 601 N. Loraine St Midland Texas 79701, with TERRY RATLIFF (hereinafter referred to as "TERRY") who decided to turn himself in for a crime he committed in another county. PASTOR went inside the police lobby with TERRY. PASTOR then walked up to a dark glass plated window at the police station and said to the person behind the window that he was Pastor PASTOR Hodge and that he had convinced TERRY, to turn himself in.

17. The officer behind the dark plated window asked TERRY if he had his identification on him. TERRY replied yes and placed his identification through the slot at the bottom of the window. PASTOR then asked the police dispatcher for SGT Jimmy Young or Detective Mitchell. PASTOR knew these two officers and felt that these officers would treat TERRY fairly. PASTOR and TERRY waited in the lobby facing the dispatchers for about 20- 30 minutes. To the right of where PASTOR and TERRY were standing is a steel door that leads upstairs to the offices. During the 20 to 30 minute wait, there were a few people that came from out of that steel door and exited to the lobby. All during this time neither PASTOR nor TERRY posed any threat to

anyone. PASTOR was talking to TERRY consoling him and telling him that TERRY did the right thing.

18. While PASTOR and TERRY were talking, suddenly PASTOR heard screaming and voices shouting "On the floor, On the Floor" as four (4) deputies barged into the Police Station. PASTOR turned his head toward the voices and suddenly noticed numerous weapons which appeared to be Assault Weapons pointed at PASTOR'S head with the <u>beam of red dots shining from them pointed directly at PASTOR'S head</u>. PASTOR dived to the floor and then felt what PASTOR thought was a knee to his side while screaming "put your hands under your stomach". PASTOR was extremely shaken up. TERRY then screamed "what are you all doing that's the Pastor. He did not do anything. He brought me here to turn myself in." The officers then screamed at PASTOR to get on his knees and raise his hands. PASTOR complied in all respects and was detained for no apparent reason by four (4) officers, one officer wearing camouflage and the others wearing civilian clothes and without any identification as sheriff's deputies of the TASK FORCE. PASTOR was in this position for an extended period of time and fearful for his life especially with the red dots from the Assault Weapons "continually" aimed at his head. At no time did these sheriff's deputies identify themselves as law enforcement. In fact, the City of Midland police department did not know who they were which *could* have escalated into a shoot out with the City of Midland Police Department and the four (4) unidentified deputies in

camouflage and/or plain clothes. While PASTOR laid on his stomach for at what seemed to be 5 to 10 minutes and subsequently on his knees, he was scared and fearful for his life in part since these officers could not be identified as law enforcement and the red dots from the assault weapons pointed directly at his head,.

19. Then one of the deputies told PASTOR, Get on your feet". PASTOR immediately complied still fearing for his life. Then one of the deputies dressed in civilian clothes who was a female officer, walked up to PASTOR and said "I bet you wish you had your blood pressure medicine". PASTOR then said, who are you? None of these four individuals acknowledged themselves as law enforcement. They were all in either camouflage or civilian clothes. PASTOR was severely shaken and fearful for his life. PASTOR was never more fearful for his life than during that time PASTOR was in the City of Midland police lobby. One of the individuals then asked PASTOR what he was driving and took PASTOR outside to see PASTOR' vehicle. At this time, PASTOR still did not know they were deputies of the TASK FORCE. None of these deputies acknowledged they were law enforcement.

20. Finally, one of the deputies identified the group as "law enforcement" after 20 minutes but the damage was done. PASTOR developed physical ailments after this incident continuing to the date of filing this complaint over a year from the incident. PASTOR later talked to the Midland City Police Chief who told him that his officers did not even know who these four (4) unidentified deputies were. In fact, the City of

8
COMPLAINT

Midland police officers also took cover when the four (4) unidentified deputies barged into the Police Department. The Police Department was not notified in advance of the actions to be taken by these four (4) sheriff's deputies. PASTOR, as a result of this incident, one (1) year after the incident suffers from PTSD, sees a counselor regularly, is on medication and suffers from nightmares and depression. The PASTOR's entire life has been effected by this incident which occurred over a year ago and PASTOR, is still going to the VA Center for counseling and has been treated for PTSD since the incident.

### FIRST CAUSE OF ACTION

**(42 U.S.C. Section 1983)**

**(4th and 14th Amendment)**

**(Against named defendant deputy sheriff NEAL and DOES 1-10, inclusive)**

21. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 20 of this Complaint.

22. In doing the acts complained of herein, officers NEAL and DOES 1-3, inclusive, acted under color of law to deprive plaintiff of certain constitutionally protected rights including, but not limited to:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth amendment to the United States Constitution;

    b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourth and Fourteenth amendments to the United States Constitution;

  c. The right to equal protection of the laws, as guaranteed by the Fourteenth amendment to the United States Constitution;

  d. The right not to have excessive force against him in violation of his 14th amendment rights.

  e. In the instant case Plaintiff PASTOR was seized by the NEAL and the other officers when a knee was placed in PASTOR' left side and PASTOR was forced to lay on his stomach for 10 minutes in the Midland police station. PASTOR was "seized" since this was a government termination of PASTOR' freedom of movement through means intentionally applied.

  f. The defendant deputies had no reason to believe PASTOR was a threat to anyone as PASTOR was in the Midland Police station with TERRY who was giving himself up.

  g. There was no reason for the defendant deputies to barge into the Midland Police station when TERRY was giving himself up peacefully with what appeared to be assault weapons locked and loaded with the laser red dots pointed at PASTOR' head. <u>This display of weapons and the pointing of firearms directly at PASTOR involves the immediate threat of deadly force.</u>

  h. The defendant deputies had no reasonable cause to believe that PASTOR posed a danger to the defendant deputies or others as PASTOR was with TERRY as he was surrendering to the police at the Midland Police station.

i. The defendant deputies knew it was objectively unreasonable given the absence of any danger to the Defendant deputies and the Midland Police officers.

j. The defendant deputies failed to announce themselves as they entered the Midland Police Station with Assault weapons locked and loaded with the laser range finder pointed at PASTOR.

WHEREFORE, plaintiff prays for relief as hereinafter set forth below.

## SECOND CAUSE OF ACTION
### (42 U.S.C. Section 1983)
### (Against defendant COUNY OF MIDLAND)
### (Monell Related Claims)

23. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 through 22 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

24. Defendant MIDLAND, including through its Sheriff's Department, and the Midland Fugitive Task Force is a "person" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Individual Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of the rights of Plaintiff.

25. Defendant MIDLAND, including through its entity County of Midland

Sheriff's Department and Midland Fugitive Task Force and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth and Fourteenth Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force applied by its deputies.

26. Defendant MIDLAND also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, officers, employees and those acting under them, including within its Sherriff's and Fugitive Task Force Departments so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

27. Moreover, based on the duties charged to Defendant MIDLAND and its policymaking officials, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of citizens with whom their deputies regularly came into contact.

28. Defendant MIDLAND established, adopted, followed, and implemented or turned a blind eye to customs and practices which were followed, complied with, and

carried out by its Sherriff's Department and the Midland Fugitive Task Force when the rights of the Plaintiff were violated as stated above.

29. At the time of the underlying events, the regularly established customs and practices of County of Midland Sherriff's Department and Midland Fugitive Task Force that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of the Plaintiff's rights as follows but are not limited to failing to train deputies to properly implement police procedures especially at another Police Department, excessive use of force, and the unwritten policy of acting with deliberate indifference to the rights of citizens who rights were violated by its deputies failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments.

30. MIDLAND is aware that its officers regular engage in the conduct Plaintiff complains of. **What deputies would enter a Police Station without identifying themselves and with assault weapons locked and loaded with the red dot laser range finder aimed at a citizen's head when there was no reasonable to believe anyone was in danger in a Police Station when a suspect was giving himself up with the assistance of a minister- in this case the PASTOR?**

31. Nevertheless, MIDLAND has made a knowing and conscious decision to refrain from promulgating policies to prevent such misconduct and has consistently and knowingly failed to provide any training to members of its Sherriff's Department with respect to Plaintiff's complaint.

32. MIDLAND's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above — the known need for a specific policy prohibiting its officers from violating citizens constitutional rights — is itself a "policy" decision which constitutes a policy of deliberate indifference.

33. This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that the members of the Sherriff's Department including the Midland Fugitive Task Force followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when the defendant officers barged into the City of Midland Police Department, in civilian or camouflage clothing with loaded assault weapons with the red dot laser range finder aimed at PASTOR'S head, and without identifying themselves as law enforcement. This incident caused severe emotional damage to PASTOR.

34. None of the constitutional violations complained of and set forth above would have happened if Defendant MIDLAND honored its obligation to promulgate policies

and train its officers of the crucial constitutional prescriptions which govern their daily work.

35. These policies, customs, and practices that disregard the constitutional protections afforded to the most vulnerable citizens was a substantial factor in causing harm to the Plaintiff.

36. MIDLAND's deliberate failure to train its deputies on these established constitutional protections was a substantial factor in causing the Plaintiff's harm.

37. Plaintiff is informed and believes that, MIDLAND failed to investigate and failed to discipline Defendant deputies for the violation of PASTOR 'constitutional rights.

38. These actions and inactions of MIDLAND were the moving force behind, and direct and proximate cause of PASTOR' injuries and as a result that have sustained general and special damages, to an extent and in an amount to be proven separately.

39. Defendant MIDLAND through the supervisors in its sheriff's department have failed to adequately train defendant officers NEAL and especially DOES 1-3 in the proper use of force.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## DAMAGES

40. As the direct and proximate result of defendants' wrongful conduct, including

15
COMPLAINT

excessive force plaintiff was injured and damaged, as set forth herein.

41. As a direct and proximate result of defendant officers' wrongful conduct, plaintiff suffered the following injuries and damages:

   a.  Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person;

   b.  Loss of physical liberty;

   c.  The Immediate threat of deadly force;

   c.  Emotional trauma and suffering, and medical expenses;

   d.  Violations of the following clearly established and well-settled federal constitutional rights include but are not limited to: (1) freedom from unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution; and, (2) right to equal protection under the Fourteenth Amendment to the United States Constitution;

   e.  The conduct of named defendant officers was malicious, wanton and oppressive. Plaintiff is therefore entitled to an award of punitive damages against said defendant officers; and,

   f.  Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of his civil rights.

# PRAYER

WHEREFORE, plaintiff prays for judgment against the Defendants, jointly and severally as follows:

1. For general damages in the sum of at least $ 500,000.00;

2. For special damages according to proof;

3. For punitive damages against the individual named defendant police officers, according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. Sections 1983 and 1988;

5. For costs of suit herein incurred; and,

6. For such other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 26, 2020

    s/ Edward A. Rose, Jr.
By Edward A. Rose, Jr. Attorney at Law
Edward A. Rose, Jr., Attorney at Law, PC
Attorney-in-Charge
State of Texas Bar No. 24081127
3027 Marina Bay Drive Suite 208
League City, Texas 77573
Phone: 713-581-6029
Fax: 832-201-9960
edrose@edroseattorneycpa.com
Attorney for Plaintiff DENNIS HODGE